UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN JONES,<br><br>             Plaintiff,<br><br>     vs.<br><br>CIMAREX ENERGY CO., THOMAS E. JORDEN, JOSEPH R. ALBI, PAUL N. ECKLEY, HANS HELMERICH, KATHLEEN A. HOGENSON, HAROLD R. LOGAN, JR., FLOYD R. PRICE, MONROE W. ROBERTSON, LISA A. STEWART, FRANCES M. VALLEJO,<br><br>             Defendants. | Case No. _____<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Brian Jones ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action against Cimarex Energy Company ("Cimarex" or the "Company") and Cimarex's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the sale of the Company to Cabot Oil & Gas Corporation ("Cabot") through Cabot's wholly-owned subsidiary Double C Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On May 24, 2021, Cimarex and Cabot announced that they had entered into an Agreement and Plan of Merger (as amended, the "Merger Agreement") pursuant to which, Cimarex

shareholders will each receive 4.0146 shares of Cabot common stock for each Cimarex share they own (the "Merger Consideration").

3.     On August 23, 2021, Cimarex filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction.  The failure to adequately disclose such material information renders the Proxy false and misleading.

4.     The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## THE PARTIES

5.     Plaintiff is, and has been at all relevant times, a continuous stockholder of Company common stock.

6.     Defendant Cimarex is a Delaware corporation with its principal place of business at 1700 Lincoln Street, Suite 3700, Denver, CO 80203.  The Company's common stock trades on the New York Stock Exchange under the ticker symbol "XEC."

7.     Defendant Thomas E. Jorden ("Jorden") has been a director of the Company at all relevant times.  In addition, Jorden serves as the Chairman of the Company Board, Chief Executive Officer ("CEO"), and President.

8.     Defendant Joseph R. Albi has been a director of the Company at all relevant times.

9.     Defendant Paul N. Eckley has been a director of the Company at all relevant times.

10. Defendant Hans Helmerich has been a director of the Company at all relevant times.

11. Defendant Kathleen A. Hogenson has been a director of the Company at all relevant times.

12. Defendant Harold R. Logan, Jr. has been a director of the Company at all times relevant.

13. Defendant Floyd R. Price has been a director of the Company at all relevant times.

14. Defendant Monroe W. Robertson has been a director of the Company at all relevant times.

15. Defendant Lisa A. Stewart has been a director of the Company at all relevant times.

16. Defendant Frances M. Vallejo has been a director of the Company at all relevant times.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

18. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any

federal district court." Id. at 1316.

19.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because defendants are found or are inhabitants or transact business in this District.  Indeed, the Company's stock trades on the New York Stock Exchange, which is also headquartered in this District.  *See, e.g.*, *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## SUBSTANTIVE ALLEGATIONS

A.     **Background of the Company**

20.     Cimarex operates as an independent oil and gas exploration and production company primarily in Texas, Oklahoma, and New Mexico.  As of December 31, 2020, it had total proved reserves of 531.0 million barrels of oil equivalent; 1.36 trillion cubic feet of proved gas reserves; 144.1 million barrels (MMBbls) of proved oil reserves; and 159.8 MMBbls of natural gas liquids reserves primarily located in the Permian Basin and Mid-Continent regions.  The Company also owned an interest in 2,765 net productive oil and gas wells.  Cimarex was founded in 2002 and is headquartered in Denver, CO.

B.     **The Proposed Transaction**

21.     On May 24, 2021, Cabot and Cimarex issued a joint press release announcing the Proposed Transaction stating, in pertinent part:

> HOUSTON and DENVER, May 24, 2021 – Cabot Oil & Gas Corporation ("Cabot") (NYSE: COG) and Cimarex Energy Co. ("Cimarex") (NYSE: XEC) today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger of equals.  The combination will bring together two industry-leading operators with top-tier oil and natural gas assets to create a diversified energy leader that is positioned to drive enhanced free cash flow generation and returns for investors through market cycles.
>
> Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Cimarex shareholders will receive 4.0146 shares of Cabot common stock for each share of Cimarex common stock owned.  The exchange ratio, together with closing prices for Cabot and Cimarex on May 21, 2021, reflects an enterprise value for the combined companies of approximately $17

4

billion.  Upon completion of the transaction, Cabot shareholders will own approximately 49.5% and Cimarex shareholders will own approximately 50.5% on a fully diluted basis.

"The combination of Cabot and Cimarex will create a free cash flow focused, diversified energy company with the scale, inventory and financial strength to thrive across commodity price cycles," Dan O. Dinges, Chairman, President and CEO of Cabot.  "The combined business will be overseen by an experienced Board and a management team that is committed to a prudent strategy built on disciplined capital investment, strong free cash flow generation and increasing returns to shareholders.  With its premier assets, increased resource diversity and a strong financial foundation, the company will be well positioned to deliver long-term value creation for its shareholders and other stakeholders."

"This transformational merger will combine our top-tier assets and advance our shared focus on delivering superior returns for investors," said Thomas E. Jorden, Chairman, President and CEO of Cimarex.  "We're building an even more resilient platform with greater financial strength in order to deliver sustainable, through-cycle returns on and of capital.  We view commodity, geography and asset diversification as strategic advantages that will drive more resilient free cash flow and long-term value creation.  We are aligned on our commitment to ESG and sustainability and look forward to bringing our talented teams together to unlock the tremendous potential of this compelling combination."

Strategic and Financial Benefits of Creating a Free Cash Flow Focused, Diversified Oil & Gas Producer

- Premier Multi-Basin Exposure Will Enhance Scale, Diversity and Capital Optionality: With Cabot's approximately 173,000 net acres in the Marcellus Shale and Cimarex's approximately 560,000 net acres in the Permian and Anadarko basins, the combined business will have a multi-decade inventory of high-return development locations in the premier oil and natural gas basins in the United States.

- Attractive and Sustainable Free Cash Flow Profile: Executing a disciplined capital allocation and reinvestment strategy, the combined business will be positioned to capitalize on its high-quality assets and diversification to drive through-cycle free cash flow generation across a wide range of commodity price scenarios.  The company's low-cost and capital efficient inventory is expected to support its robust, cumulative free cash flow outlook of approximately $4.7 billion of free cash flow from 2022 to 2024 based on $55 per barrel WTI oil prices and $2.75 per MMBtu NYMEX natural gas prices.

- Positioned to Accelerate the Return of Capital to Shareholders: The combined business will be well positioned to deliver enhanced capital returns to shareholders across a full range of market conditions through a multi-faceted program offering a sustainable base dividend that is positioned to grow over time, a variable dividend and a special dividend.  The new business is expected to have an annual base dividend of $0.50 per share (representing a forward dividend yield of 2.8%), which is paid quarterly and plans to supplement the base dividend with a quarterly variable dividend to achieve a target capital return of at

least 50% of quarterly free cash flow, with the first payment expected in the first quarter of 2022. The combined business also plans to declare and pay a $0.50 per share special dividend to all common shareholders of the combined business promptly after the closing of the transaction.

- Substantial Cost Saving Opportunity: The companies are targeting annual general and administrative cost synergies of $100 million beginning within 18 months to two years following the closing.

- Strong Balance Sheet: The combined business is expected to have a strong capital structure with minimal near-term debt maturities and a low cost of capital. Upon closing, the combined business is anticipated to have pro forma liquidity of $2.2 billion and will target a net debt-to-EBITDAX ratio of less than 1.0x. This strong financial foundation and broader scale is expected to provide flexibility and optionality for capital deployment.

- Commitment to ESG and Sustainability: Cabot and Cimarex share commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on the two companies' ongoing ESG efforts by, among other things, continuing to link executive compensation to ESG performance and maintaining strong board oversight of ESG risks and programs. The combined business is expected to report sustainability metrics pursuant to SASB and TCFD standards.

Headquarters, Leadership and Governance

The combined business, which will operate under a new name, plans to be headquartered in Houston and maintain its regional offices.

Upon closing, Mr. Dinges will serve as Executive Chair of the Board of Directors of the newly combined business and Mr. Jorden will lead the company as CEO and will serve on the Board of Directors. Scott Schroeder, Cabot's current Chief Financial Officer, will serve as CFO of the combined business. The remainder of the company's leadership team will include executives from both Cabot and Cimarex.

The Board of Directors of the company will be composed of five directors from the current Cabot Board of Directors, including Mr. Dinges, and five directors from the current Cimarex Board of Directors, including Mr. Jorden.

Timing and Approvals

The transaction is expected to close in the fourth quarter of 2021, subject to regulatory clearance, the approval of Cabot and Cimarex common shareholders and the satisfaction of other customary closing conditions.

Both Cabot and Cimarex intend to continue paying base quarterly cash dividends through closing.

**C.**     **The Proxy Contains Material Misstatements and Omissions**

22.     On August 23, 2021, defendants filed the materially incomplete and misleading Proxy with the SEC and disseminated it to Cimarex's stockholders.  Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information.

23.     Defendants were obligated to carefully review the Proxy prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

24.     First, the Proxy fails to disclose material information concerning the financial projections for Cimarex and Cabot.

25.     The Proxy omits material information regarding the Company's financial projections, including the line items underlying: (a) EBITDAX; and (b) Unlevered Free Cash Flow.

26.     The Proxy omits material information regarding Cabot's financial projections, including the line items underlying: (a) EBITDAX; and (b) Free Cash Flow (Pre-Dividend).

27.     Second, the Proxy fails to disclose material information concerning Tudor, Pickering, Holt & Co.'s ("Tudor Pickering") financial analyses.

28.     With respect to Tudor Pickering's *Net Asset Value Analysis*, the Proxy fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates; (iii) the values of the cash flows generated by the estimated proved developed reserves and undeveloped hydrocarbon resources, the future effects of hedging, and the effects of general and administrative expenses, taxes, and non-drilling and completion capital expenditures used in the analysis; and (iv) the net debt and preferred equity used

in the analysis.

29. With respect to Tudor Pickering's *Discounted Cash Flow Analyses*, the Proxy is materially misleading because it fails to disclose: (i) the terminal values used in the analyses; (ii) line items used to calculate unlevered free cash flow; (iii) the individual inputs and assumptions underlying the discount rate range and multiples range used in the analyses; and (iv) the net debt, preferred equity and number of fully-diluted outstanding shares used in the analyses.

30. With respect to Tudor Pickering's *Has/Gets Analysis – NAV Accretion*, the Proxy fails to disclose: (i) the estimated fees and expenses related to the Proposed Transaction; (ii) the individual inputs and assumptions underlying the discount rates; and (iii) the pro forma share count.

31. With respect to Tudor Pickering's *Equity Research Analysts' Price Targets* analyses, the Proxy fails to disclose: (i) the price targets observed in the analyses; and (ii) the sources thereof.

32. The omission of above-referenced material information renders the following sections of the Proxy false and misleading: "Opinion of Tudor, Pickering, Holt & Co., Cimarex's Financial Advisor," "Cabot Unaudited Forecasted Financial Information," and "Unaudited Forecasted Financial Information."

## CLAIMS FOR RELIEF

## COUNT I

**Against All defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Defendants have filed the Proxy with the SEC with the intention of soliciting Cimarex stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

35. In so doing, defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Cimarex, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (a) management's financial projections; and (b) the value of Cimarex shares and the financial analyses performed by Tudor Pickering in support of its fairness opinion.

38. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

39. The misrepresentations and omissions in the Proxy are material to Plaintiff and the other Company stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of Cimarex within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cimarex and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transaction.  They were, thus, directly involved in the making of the Proxy.

44. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Cimarex stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  September 17, 2021             **Respectfully submitted**,

By  /s/ Shallom Engel
Shallom Engel
**Engel Law PLLC**
2329 Nostrand Avenue, Suite 100
Brooklyn, NY 11210
Telephone: (917) 573-6555
Email: shallom@engellawpllc.com

*Attorneys for Plaintiff*